Eric Stephenson (9779)
STEPHENSON LAW FIRM
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
(844) 529-2112
eric@utahjustice.com

Lester Perry (2571)
HOOLE & KING L.C.
4276 Highland Drive
Salt Lake City, Utah 84124
Telephone: (801) 272-7556
Facsimile: (801) 272-7557

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBYN YOUNG,<br><br>     Plaintiff,<br><br>vs.<br><br>NPAS, INC. and MEDICREDIT, INC.,<br><br>     Defendants. | **MOTION FOR SUMMARY JUDGMENT**<br><br><br>Case Number: 2:16-cv-01104<br><br>Judge: Paul M. Warner |

Plaintiff Robyn Young, by and through her attorneys  and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully requests for this Honorable Court to grant partial summary judgment in her favor and against Defendants for their violations of the Fair Debt Collection Practices Act as described herein.

### INTRODUCTION

Young was a special education teacher for Granite School District. She was severely beaten by a student at work. She suffered debilitating injuries that require substantial ongoing medical care. She will likely suffer from those injuries for the remainder of her life. Because she

was injured at work and within the course and scope of her employment, Young's employer is solely responsible for payment of that medical care, including ongoing care. Young is not even arguably responsible for payment for any of those debts but Defendants nonetheless engaged in carefully orchestrated campaigns against Young to collect the debts from her.

Initially, Young disclosed to her medical providers that the injuries she sustained, and thus the medical treatment needed to treat those injuries, was subject to payment under the Utah Worker's Compensation Act. Later, Young told the Defendants she was litigating that issue and Young's two attorneys told the Defendants Young was represented by counsel and she would not pay the alleged debts.

There was no mystery about it. Young was disputing the debts, refusing to pay, litigating the issue, and represented by counsel but Defendants still kept demanding payments from Young. Incredibly, both Defendants even told Young she was required to make payments to receive ongoing medical care—a plainly false and unconscionable representation.

Defendants' course of conduct in this case and the illegality of that conduct are not in dispute in this case. Both Defendants illegally demanded payments from Young for a debt she did not owe as a matter of law. Both Defendants communicated with Young by telephone and mail after she refused to pay the debts and had obtained legal representation. Finally, both Defendants made false representations of the character, amount, and legal status of the alleged debts to trick Young into paying debts she did not owe. None of that conduct is in dispute.

Young is therefore entitled to summary judgment under the Fair Debt Collection Practices Act which unequivocally prohibits the abusive, deceptive, and unconscionable collection conduct Defendants employed against Young.

STATEMENT OF ELEMENTS

To prevail on a claim under the Fair Debt Collection Practices Act, Young must demonstrate that the Defendants engaged in any prohibited conduct in attempting to collect a debt. Among other things applicable to this case, such prohibited conduct under the FDCPA includes:

1. Collecting or attempting to collect "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[1]

2. Falsely representing "the character, amount, or legal status of any debt."[2]

3. Using "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[3]

4. Knowingly communicating directly with Young when she was represented by an attorney.[4]

5. Failing to cease communicating with Young after receiving written notice that Young refused to pay the alleged debts.[5]

---

[1] 15 U.S.C. § 1692f(1)
[2] 15 U.S.C. § 1692e(2)(A)
[3] 15 U.S.C. § 1692e(10)
[4] 15 U.S.C. § 1692c(a)(2)
[5] 15 U.S.C. § 1692c(c)

STATEMENT OF UNDISPUTED FACTS

For the purposes of this motion only, Young accepts the following facts as undisputed:

**NPAS Communications**

1. As of September 29, 2014, NPAS knew payment for Young's medical treatment at issue in this case was subject to worker's compensation claims.[6]

2. As of October 13, 2015, NPAS knew liability for the alleged debts was the subject of litigation.[7]

3. As of October 20, 2015, NPAS knew Young was represented by an attorney.[8]

4. As of November 23, 2015, NPAS knew Young was represented by attorney Dawn Atkin and that payment for Young's medical treatment at issue in this case was subject to worker's compensation claims.[9]

5. On January 19, 2016, NPAS attempted to collect the alleged debts by communicating with Young and demanding payment from Young in writing.[10]

6. On February 3, 2016, NPAS communicated with Young by telephone to collect the alleged debts.[11]

7. During the February 3, 2016 phone call, Young advised NPAS that she was represented by an attorney, that the debts were supposed to be paid by worker's compensation, and that the debts were the subject of litigation.[12]

---

[6] Exhibit P-16 at NP0002 – NP0003
[7] Exhibit P-16 at NP0025 – NP0026
[8] Exhibit P-16 at NP0025 – NP0026
[9] Exhibit P-16 at NP0033 – NP0034
[10] Robyn Young Decl. ¶ 1; Exhibit P-1
[11] Robyn Young Decl. ¶¶ 2 – 4; Exhibit P-16 at NP0049 and NP0053 – NP0066

8.  During the February 3, 2016 phone call, NPAS represented that Young was required to make a payment toward the alleged debts to receive additional medical treatment.[13]

9.  As a result of Defendant's demands for payment and representations that Young could not have any follow-up medical treatment if she did not pay the alleged debts, Young made payments toward the alleged debts on February 3, 2016.[14]

10. On March 9, 2016, NPAS attempted to collect the alleged debts by communicating with Young and demanding payment from Young in writing.[15]

11. On May 13, 2016, Young's attorney Dawn Atkin notified Defendant's principal St. Marks Hospital that Young was represented by counsel, that a worker's compensation claim had been filed with the Utah Labor Commission, that payment for the alleged debts was not Young's responsibility under the Utah Worker's Compensation Act, and that Young disputed the validity of the alleged debts.[16]

12. On May 13, 2016, Young's attorney, Dawn Atkin, sent NPAS two letters notifying it that she represented Young and that payment for Young's medical treatment at issue in this case was subject to worker's compensation claims.[17]

13. On May 17, 2016, NPAS attempted to collect the alleged debts by communicating with Young and demanding payment from Young in writing.[18]

---

[12] Robyn Young Decl. ¶¶ 2 – 4; Exhibit P-16 at NP0049, NP0053 – NP0066
[13] Robyn Young Decl. ¶¶ 2 – 4; Exhibit P-16 at NP0049, NP0053 – NP0066
[14] Robyn Young Decl. ¶¶ 3 – 4; Exhibit P-16 at NP0057 – NP0066
[15] Robyn Young Decl. ¶ 5; Exhibit P-2
[16] Exhibit P-15; NPAS' Answer to Amended Complaint ¶ 29, ECF No. 28
[17] Exhibit P-15; Exhibit P-16 at NP0040 – 41, NP0044, NP0067
[18] Robyn Young Decl. ¶ 7; Exhibit P-3; Exhibit P-16 at NP0102 – NP0103

14. On July 5, 2016, Young's attorney Lester Perry notified NPAS that he represented Young.[19]

15. NPAS attempted to collect the alleged debts by communicating with Young and demanding payment from Young in writing on the following dates:[20]

- August 26, 2016
- September 23, 2016
- October 24, 2016

16. NPAS also communicated or attempted to communicate with Young by telephone to collect the alleged debts on the following dates:[21]

- October 6, 2014
- June 30, 2015
- July 1, 2015
- July 2, 2015
- July 7, 2015
- July 8, 2015
- July 9, 2015
- July 10, 2015
- September 13, 2015
- February 2, 2016
- February 3, 2016
- February 4, 2016
- September 16, 2016
- September 19, 2016
- September 20, 2016
- September 21, 2016
- September 23, 2016
- September 24, 2016

---

[19] Robyn Young Decl. ¶ 8; Exhibit P-4; NPAS' Answer to Am. Complaint ¶ 31, ECF No. 28
[20] Robyn Young Decl. ¶ 9 – 11; Exhibits P-5; P-6, and P-7; NPAS' Answer to Amended Complaint ¶ 26, ECF No. 28
[21] Robyn Young Decl. ¶¶ 2 – 4 and 12 – 13; *See* Exhibit P-16; NPAS' Answer to Amended Complaint ¶ 25, ECF No. 28

- October 14, 2016
- October 19, 2016
- April 12, 2017

17. NPAS also attempted to communicate with Young on multiple other occasions by telephone after it was notified that Young did not owe the debts and was represented by counsel.[22]

**Medicredit Communications**

18. As of October 11, 2014, Medicredit knew payment for Young's medical treatment at issue in this case was subject to worker's compensation claims.[23]

19. As of February 5, 2016, Medicredit knew liability for the alleged debts was the subject of litigation.[24]

20. As of February 5, 2016, Medicredit knew Young was represented by an attorney.[25]

21. Medicredit attempted to collect the alleged debts by communicating with Young and demanding payment from Young in writing on or near the following dates:[26]

- February 5, 2016
- March 4, 2016
- March 8, 2016
- April 25, 2016
- May 1, 2016
- May 27, 2016
- July 4, 2016
- July 11, 2016

---

[22] Robyn Young Decl. ¶¶ 2 – 4 and 12 – 13; Exhibit P-5; *See* Exhibit P-16
[23] Exhibit P-17 at MC0076
[24] Exhibit P-17 at MC0066
[25] *Id.*
[26] Robyn Young Decl. ¶¶ 15 – 17; Exhibit P-17; Medicredit's Answer to Am. Complaint ¶ 20, ECF No. 27

22. On March 4, 2016, Medicredit communicated with Young by telephone to collect the alleged debts and demanded payment from Young.[27]

23. Sometime on or around March 4, 2016, Medicredit reported to TransUnion that one of the alleged debts was "placed for collection" and was Young's responsibility to pay.[28]

24. On April 24, 2016, Medicredit updated the information it reported to TransUnion in an attempt to collect one of the alleged debts from Young and in doing so again reported that the alleged debt was "placed for collection" and was Young's responsibility to pay.[29]

25. On April 25, 2016, Medicredit communicated with Young by telephone and represented that Young was required to pay a portion of the alleged debts to get additional medical treatment.[30]

26. As a result of Defendant's demands for payment and representations that Young could not have any follow-up medical treatment if she did not pay the alleged debts, Young made payments toward the alleged debts on April 25, 2016.[31]

27. Sometime on or around April 25, 2016, Medicredit reported to TransUnion that one of the alleged debts was "placed for collection" and was Young's responsibility to pay.[32]

28. On May 11, 2016, Medicredit updated the information it reported to TransUnion in an attempt to collect two of the alleged debts and in doing so reported that the alleged debts were "placed for collection" and were Young's responsibility to pay.[33]

---

[27] Robyn Young Decl. ¶ 14; Exhibit P-17 at MC0050 – MC0056; Medicredit's Answer to Amended Complaint ¶ 22, ECF No. 27
[28] Young Decl. ¶ 18; Exhibit P-11
[29] *Id.*
[30] Robyn Young Decl. ¶¶ 19 – 21; Exhibit 17 at MC0038 – MC0050
[31] *Id.*
[32] Young Decl. ¶ 18; Exhibit P-11

29. On June 26, 2016, Medicredit updated the information it reported to TransUnion in an attempt to collect one of the alleged debts from Young and in doing so reported that the alleged debt was "placed for collection" and was Young's responsibility to pay.[34]

30. Neither of the credit reports Young ordered and reviewed report the debts from Medicredit as being in dispute.[35]

31. On May 13, 2016, Young's attorney Dawn Atkin notified Defendant's principal St. Marks Hospital that Young was represented by counsel, that a worker's compensation claim had been filed with the Utah Labor Commission, that payment for the alleged debts was not Young's responsibility under the Utah Worker's Compensation Act, and that Young disputed the validity of the alleged debts.[36]

32. On July 4, 2016, Medicredit communicated with Young by telephone and Young told Medicredit she was represented by an attorney, that payment for the alleged debts was not Young's responsibility under the Utah Worker's Compensation Act, and that Young disputed the validity of the alleged debts.[37]

33. On July 5, 2016, Young's attorney Lester Perry notified Medicredit that he represented Young.[38]

---

[33] Young Decl. ¶ 18; Exhibit P-12
[34] Young Decl. ¶ 18; Exhibit P-11
[35] Young Decl. ¶ 25; Exhibit P-11; Exhibit P-12
[36] Young Decl. ¶ 26; Exhibit P-13; Medicredit's Answer to Am. Complaint ¶ 29, ECF No. 27
[37] Young Decl. ¶ 27; Exhibit P-17
[38] Young Decl. ¶28; Exhibit P-14; Medicredit's Answer to Am. Complaint ¶ 31, ECF No. 27

34. Medicredit communicated or attempted to communicate with Young by telephone to collect the alleged debts on the following dates:[39]

- February 5, 2016
- February 11, 2016
- February 16, 2016
- February 19, 2016
- February 25, 2016
- March 3, 2016
- March 4, 2016
- March 8, 2016
- March 14, 2016
- March 21, 2016
- March 28, 2016
- April 6, 2016
- April 11, 2016
- April 19, 2016
- April 22, 2016
- April 24, 2016
- April 25, 2016
- April 26, 2016
- April 27, 2016
- April 28, 2016
- May 2, 2016
- May 4, 2016
- May 5, 2016
- May 9, 2016
- May 10, 2016
- May 11, 2016
- May 17, 2016
- May 23, 2016
- May 25, 2016
- May 27, 2016
- June 2, 2016

---

[39] Young Decl. ¶ ¶ 14, 19 – 21, 27, and 29; *See* Exhibit P-17

- June 7, 2016
- June 9, 2016
- June 13, 2016
- June 14, 2016
- June 15, 2016
- June 21, 2016
- June 22, 2016
- June 26, 2016
- June 27, 2016
- June 28, 2016
- June 29, 2016
- June 30, 2016
- July 4, 2016
- July 5, 2016
- July 7, 2016
- July 14, 2016
- July 21, 2016

35. Medicredit also attempted to communicate with Young on multiple other occasions by telephone after it was notified that Young did not owe the debts and was represented by counsel.[40]

## STANDARD OF REVIEW

Summary judgment is appropriate if the movant establishes that there is no genuine dispute about the material facts and the law entitles it to judgment.[41] Disputes about material facts are genuine only, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[42] The moving party is entitled to judgment as a matter of law if, "the nonmoving party has failed to make a sufficient showing on an essential element of her case with

---

[40] Robyn Young Decl. ¶ 29; Medicredit's Answer to Amended Complaint ¶ 22
[41] Fed.R.Civ.P. 56(a)
[42] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)

respect to which she has the burden of proof."[43] If, the moving party meets this burden, "the nonmovant must go beyond the pleadings" and produce evidence that specific facts exist over which there is a genuine issue for trial.[44] The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts."[45] If the evidence produced by the nonmoving party, "is merely colorable... or is not significantly probative, ... summary judgment may be granted."[46] Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial.[47]

THE FAIR DEBT COLLECTION PRACTICES ACT

The FDCPA was enacted in 1977 for, *inter alia*, the purpose of eliminating abusive debt collection practices by debt collectors.[48] The FDCPA is considered a remedial statute and therefore "it should be construed liberally in favor of the consumer."[49] Such broad construction is necessary, "so as to effect its purpose."[50] The FDCPA is considered a strict liability statute since it "does not ordinarily require proof of intentional violation."[51] "Proof of one violation is

---

[43] *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)
[44] *Celotex*, 106 S.Ct. at 2553-54
[45] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)
[46] *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249 (*citations omitted*)
[47] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)
[48] J*erman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA,* 559 U.S. 573, 130 S.Ct. 1605, 1608, 176 L.Ed.2d 519 (2010); *Lewis v. ACB Bus. Servs., Inc.,* 135 F.3d 389, 398 (6th Cir.1998) (*quoting* 15 U.S.C. § 1692(e))
[49] *Johnson v. Riddle*, 305 F.3d 1007, 1117 (10th Cir. 2002)
[50] *Brown v. Card Serv. Ctr*., 464 F.3d 450, 453 (3d Cir. 2006)
[51] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))

sufficient to support a finding of summary judgment in favor of the Plaintiff in an FDCPA action."[52]

In determining whether there is a violation of the FDCPA, courts apply the least sophisticated consumer test.[53] This objective standard, "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd ... the ignorant, the unthinking and the credulous."[54] The least sophisticated consumer standard is a low standard and "is consistent with the norms that courts have traditionally applied in consumer-protection law."[55] For example, "a communication that would not deceive or mislead a reasonable debtor might still deceive or mislead the least sophisticated debtor."[56] Accordingly, "any lender-debtor communications potentially giving rise to claims under the FDCPA . . . should be analyzed from the perspective of the least sophisticated debtor."[57]

Prohibiting unfair collection conduct against someone who does not owe a debt was also considered of critical importance for enacting the FDCPA in the first place.[58] It was Congress' intent to protect people other than debtors, who are subject to harassment by debt collectors.[59]

---

[52] *Bentley v. Great Lakes Collection Bureau,* 6 F.3d 60, 62 (2nd Cir.1993); *Cacace v. Lucas*, 775 F.Supp. 502, 505 (D.Conn.1990)
[53] *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993); *see also Ditty v. CheckRite, Ltd*., 973 F.Supp. 1320, 1329 (D. Utah 1997)
[54] *Id.* at 1318-1319
[55] *Brown v. Card Serv. Ctr*., 464 F.3d 450, 453 (3d Cir. 2006)
[56] *Rosenau v. Unifund Corp*., 539 F.3d 218, 221 (3d Cir. 2008) (*quoting Wilson v. Quadramed*, 225 F.3d 350, 354 (3d Cir. 2000))
[57] *Brown*, 464 F.3d at 454
[58] H.R.Rep. No. 131, 95th Cong. 1st Sess. 8
[59] *See* S.Rep. No. 382, 95th Cong. 1st Sess. 4 reprinted in 1977 U.S.Code Cong. & Admin.News 1695, 1699 (noting one purpose of Act is to prevent debt collectors from "dunning the wrong person....")

"Certainly a person who has a common name and is being hounded by a debt collector because of the debts of another person deserves the protection this legislation will offer."[60]

ARGUMENT

**Defendants violated the FDCPA by collecting or attempting to collect debts that were not permitted by law**

It is undisputed both Defendants attempted to collect debts from Young that were not permitted by law. Under Utah law, payment for Young's injuries was solely the responsibility of Young's employer.[61] Any other result is explicitly prohibited.[62]

Despite the plain language of the law, Medicredit attempted to collect the alleged debts from Young by sending her collection letters on March 8, 2016, May 1, 2016, July 11, 2016 among others.[63] Medicredit also attempted to collect the debts from Young by telephone on numerous occasions, and on at least one instance actually collected money from Young under the threat of withholding additional medical care.[64] Medicredit even reported false information in Young's TransUnion credit report to attempt to collect the illegal debts from Young.[65]

NPAS also attempted to collect the alleged debts from Young by sending her collection letters on multiple occasions, including, January 19, 2016, March 3, 2016, May 17, 2016, July 5, 2016, August 26, 2016, September 23, 2016, and October 24, 2016.[66] NPAS also repeatedly

---

[60] H.R.Rep No. 1202, 94th Cong.2d Sess. 5
[61] Utah Code Ann. § 34A-2-401(2)
[62] *Id*.
[63] Robyn Young Decl. ¶¶ 15 – 17; Exhibits P-8, P-9, and P-10; *See also* Exhibit P-17
[64] Young Decl. ¶¶ 14, 19 – 21, 27, and 29; *See* Exhibit P-17
[65] Young Decl. ¶¶ 18, 22 – 25; Exhibits P-11 and P-12; Exhibit P-17 at MC0034 and MC0050
[66] Young Decl. ¶¶ 1, 5, 7, and 9 – 11; Exhibits P-1, P-2, P-3 P-5, P-6, and P-7; NPAS' Answer to Amended Complaint ¶ 26, ECF No. 28

attempted to collect the debt by telephone and, like Medicredit, also collected money from Young under the threat of withholding medical care.[67]

Each of those collections and attempted collections violates the FDCPA which strictly prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."[68] Under the plain language of the statue, the prohibition includes even merely attempting to collect even miniscule amounts to which the collector is not entitled.[69] When analyzing the "permitted by law" standard, the proper inquiry is whether state substantive law permitted the Defendants to collect the money that they demanded.[70]

Here the result of that inquiry is not disputed. Young was injured at work within the course and scope of her employment. As a matter of law she is not obligated to pay for any medical care she received as a result of those injuries yet that is exactly what Defendants were collecting.[71] Instead, her employer is solely responsible for those payments.[72] Because it is undisputed Defendants collected and attempted to collect debts from Young that were not expressly permitted by law, Young is entitled to summary judgment in her favor that the Defendants violated section 1692f(1) of the Fair Debt Collection Practices Act.

---

[67] Robyn Young Decl. ¶¶ 2 – 4, 12, 13; Exhibit P-16
[68] 15 U.S.C. § 1692f(1)
[69] 15 U.S.C. § 1692f; *Duffy v. Landberg*, 215 F.3d 871, 873-75 (8th Cir.2000) (finding that three demand letters that overstated interest calculations by $1.29, $1.84, and $.65, respectively, violated the plain language of § 1692f(1))
[70] *Id.*; *Tito Pollice v. Nat'l Tax Funding*, 225 F.3d 379 at 407 (3rd Cir. 2000); *Tuttle v. Equifax Check*, 190 F.3d 9, 13-15 (2d Cir. 1999)
[71] Utah Code Ann. § 34A-2-401(2)
[72] *Id.*

**Defendants violated the FDCPA by making false representations about the character, amount, or legal status of the debt and by using false representations or deceptive means to collect the debt**

Young was severely beaten by one of her students at her work. She suffered numerous debilitating injuries that require substantial ongoing medical care. She will likely suffer from those injuries for the remainder of her life. Because she was injured at work and within the course and scope of her employment, Young's employer is solely responsible for payment of that medical care, including ongoing care.[73]

Even though Young was never responsible to pay the alleged debts, both Defendants represented that Young owed the alleged debts, demanded payment from Young, and incredibly, forced Young to make payments so she could obtain ongoing medical treatment she needed to quell her incapacitating migraines.[74] Medicredit even misrepresented on Young's TransUnion credit report that Young owed the alleged debts and that they were delinquent.[75] The cruelty of those false representations and demands for payment is not only beyond reproach, but as a matter of law, false and deceptive. Under the Utah Worker's Compensation Act Young is entitled to ongoing care and she is not required to pay for any of it.[76]

The FDCPA is not unclear on this issue either. Under its plain language debt collectors are strictly prohibited from making any false representations of "the character, amount, or legal status" of the debt or using "any false representation or deceptive means to collect or attempt to

---

[73] Utah Code Ann. § 34A-2-401(2)
[74] Robyn Young Decl. ¶¶ 1 – 5, 7, 9 – 13, 14 – 25, 27, 29; Exhibits P-1, P-2, P-3, P-5, P-6-, P-7, P-8, P-9, P-10, P-11, and P-12; *See* Exhibit P-16; *See* Exhibit P-17
[75] Robyn Young Decl. ¶¶ 18, 22 – 25; Exhibits P-11 and P-12; Exhibit P-17 at MC0034 and MC0050
[76] Utah Code Ann. § 34A-2-401(2)

collect any debt ...”[77] Falsely claiming Young was required to pay for the alleged debts to get ongoing medical care squarely fits that prohibition. But even merely claiming Young owed the debts in the first place also falls under that prohibition. Young did not owe the alleged debts, never had an obligation to pay the debts, and under Utah law, did not have to make payments toward the debts to receive ongoing medical treatment, yet Defendants asserted each of those false representations just to collect a few hundred dollars.

Federal district courts have consistently held that it violates the FDCPA to attempt to collect a debt from a person who does not owe it.[78] In *Johnson v. Bullhead Investments LLC*, for example, the court held that the act of serving a complaint and summons to the address of a person with almost the exact same name as the true debtor but who is not the true debtor, “is a false and deceptive representation of the legal nature of the debt and is therefore a violation of the FDCPA.”[79] Similarly, in *West v. Costen*, the District Court held that a parent who received a letter demanding that her son pay a debt he allegedly owed could recover under section 1692e(2).[80] Attempting to collect a debt from a non-debtor spouse has also been held to violate the FDCPA prohibition on false statements.[81] Other courts agree that attempting to collect a debt

---

[77] *See* 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10)(respectively)
[78] *See, e.g.*, *Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 254 & n.18 (S.D.N.Y. 2011) (collecting cases in which “[d]istrict courts have found that ‘an attempt to collect a debt from a non-debtor’” violates §§ 1692e(a)(2) and 1692(10))
[79] *Johnson v. Bullhead Invs., LLC*, No. 1:09CV639, 2010 WL 118274 at *6 (M.D.N.C. Jan. 11, 2010)(*unpublished*)
[80] *West v. Costen*, 558 F.Supp. 564, 584 (W.D.Va.1983)
[81] *Vitullo v. Mancini*, 684 F.Supp.2d 747, 758 (E.D. Va. 2010)

from a non-debtor "constitutes a 'false representation' as to the character or status of the debt in violation of 1692e."[82]

Other similar situations support the conclusion that a collector violates the FDCPA when it seeks to collect a debt that is not owed. For example, demanding payment from a person for a debt that was discharged in bankruptcy violates § 1692e(2)(A).[83] Falsely and deceptively representing the character of a debt also occurs when a collector demands payment of a debt that was satisfied.[84] In *Berndt v. Fairfield Resorts, Inc.*, the court held that section 1692e(2)(A) is violated even when the debt collector unintentionally misrepresents the amount of debt owed by sending dunning letters to consumers who did not owe the debt.[85] Even merely dunning a person not obligated to repay the debt gives rise to liability under the FDCPA "as a matter of law because it is, *ipso facto*, a false representation about the status or character of the debt."[86]

Defendants violated the FDCPA's prohibitions on making false representations as to "the character, amount, or legal status" of the alleged debts and used "any false representation or deceptive means to collect or attempt to collect any debt ..."[87] Young did not owe the debts and those debts were subject to payment under worker's compensation but Defendants represented

---

[82] *Stuart v. AR Res., Inc.*, Civ. No. 10-3520, 2011 WL 904167 at *4 & n. 2 (E.D.Pa. Mar. 16, 2011); *accord, e.g., Velazquez v. NCO Fin. Sys., Inc.*, No. 11-CV-00263, 2011 WL 2135633 at *5 (E.D.Pa. May 31, 2011)(*unpublished*)("[D]emanding payment from the wrong individual, even where the collector mistakenly sends one letter may give rise to a claim under the FDCPA as a matter of law." )

[83] *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003)

[84] *Chiverton v. Fed. Fin. Group, Inc.*, 399 F. Supp. 2d 96, 101 (D. Conn. Sept. 30, 2005)

[85] *See, e.g., Berndt v. Fairfield Resorts, Inc.*, 337 F.Supp.2d 1120, 1131 (W.D. Wis. 2004), *rev'd on other grounds on reconsideration by*, 339 F.Supp.2d 1064 (W.D. Wis. 2004)

[86] *Owens v. Howe*, No. 04-CV-152, 2004 U.S. Dist. LEXIS 22728 at *34-35 (N.D.Ind. Nov. 8, 2004)(*unpublished*)

[87] *See* 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10)(*respectively*)

otherwise. Young is therefore entitled to summary judgment in her favor that the Defendants violated sections 1692e(2)(A) and 1692e(10) of the Fair Debt Collection Practices Act.

**Defendants violated the FDCPA by communicating with Young after they knew she was represented by an attorney**

It is undisputed that both Defendants communicated with Young by mail and by telephone after they knew she was represented by an attorney. Each of those communications violated the Fair Debt Collection Practices Act which explicitly provides, "a debt collector may not communicate with a consumer in connection with the collection of any debt—if the debt collector knows the consumer is represented by an attorney with respect to such debt …"[88]

Defendants had both constructive notice and actual notice that Young was represented yet ignored those notices and communicated with her anyway. As far back as October 1, 2015 Tristar Risk Management notified NPAS the alleged debts were the subject of litigation.[89] Medicredit was aware payment for medical treatment was subject to worker's compensation claims as early as October 11, 2014 and that the alleged debts were in litigation as of February 5, 2016.[90] The obvious and easily confirmed conclusion upon receiving notice of litigation was that Young was represented by an attorney.

To be certain they knew, Young notified NPAS the alleged debts were in litigation and that she was represented by at attorney on February 3, 2016.[91] Young similarly informed Medicredit on April 25, 2016.[92] Young's attorneys then also notified both Defendants in writing. Her counsel Dawn Atkin sent letters to NPAS on May 13, 2016 and May 27, 2016 and to

---

[88] 15 U.S.C. § 1692c(a)(2)
[89] Exhibit P-16 at NP0090
[90] Exhibit P-17 at MC0076; Exhibit P-17 at MC0066
[91] Young Decl. ¶ 2 – 4; *See* Exhibit P-16
[92] Young Decl. ¶ 19; *See* Exhibit P-17

Defendants' principal St. Mark's Hospital on the same day.[93] Young's other attorney Lester

Perry then sent additional letters to both Defendants on July 5, 2016.[94] Even so, those notices

were superfluous as both Defendants were already aware Young was represented by counsel.[95]

Despite repeated unambiguous notices Young was represented by two different attorneys,

both Defendants continued communicating with Young in violation of the FDCPA. Medicredit

mailed Young multiple collection letters from February 5, 2016 through July 11, 2016.[96] NPAS

sent Young multiple collection letters from January 19, 2016 through October 24, 2016.[97]

Telephone communications were even more pervasive. NPAS called Young at least a

dozen times after it knew she was represented by counsel.[98] Medicredit called Young an

incredible 48 times or more after it knew she was represented by an attorney.[99] Each of those

calls occurred after Defendants received notice Young was represented by an attorney and each

communication was made for the purpose of collecting or attempting to collect the alleged debts.

It is undisputed that each of those letters and telephone calls violated the FDCPA.

Defendants knew Young was represented by an attorney but still continued communicating with

---

[93] Exhibits P-13 and P-15
[94] Exhibits P-4 and P-14
[95] Robyn Young Decl. ¶¶ 2, 13, 19, and 29; Exhibit P-16 at NP0025 – NP0026 and NP0033 – NP0034; Exhibit P-17 at MC0066
[96] Young Decl. ¶¶ 15 – 17; Exhibits P-8, P-9, and P-10; Exhibit P-17; Medicredit's Answer to Amended Complaint ¶ 20, ECF No. 27
[97] Young Decl. ¶¶ 1, 5, 7, 9, 10, and 11; Exhibits P-1, P-2, P-3, P-5, P-6, and P-7; Exhibit P-16; NPAS' Answer to Amended Complaint ¶ 26, ECF No. 28
[98] Young Decl. ¶¶ 2 – 4 and 12 – 13; Exhibit P-16
[99] Young Decl. ¶¶ 14, 19 – 21, 27, and 29; Exhibit P-17; Medicredit's Answer to Amended Complaint ¶ 20, 23

her to collect the alleged debts.[100] Even if she owed the debts, those communications violated the FDCPA and entitle Young to summary judgment.[101]

**Defendants violated the FDCPA by failing to cease communicating with Young after receiving her refusal to pay the alleged debts**

The FDCPA strictly prohibits debt collectors from communicating with consumers to collect a debt after receiving a written refusal to pay or notice to cease further communications.[102] "If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer, the debt collector **shall not** communicate further with the consumer with respect to such debt."[103] That provision has three exceptions but none apply in this case.[104] Once the refusal or cease communications request is received, any further communications to collect the debt violate the FDCPA.[105]

Here, Young's attorneys informed Defendants that she did not owe the alleged debts because the Worker's Compensation Fund was solely responsible for payment.[106]  Even before those notifications, Defendants knew Young was refusing to pay the alleged debts since she was involved in litigation over the matter.[107] To even the most unsophisticated collector it was obvious that because liability for the debts was in litigation Young wanted no further collection

---

[100] 15 U.S.C. § 1692c(a)(2)
[101] *Id.*
[102] 15 U.S.C. § 1692c(c)
[103] *Id. Emphasis added*
[104] *Id.*
[105] *Id.*
[106] Robyn Young Decl. ¶¶ 6, 8, 26, 28; NPAS' Answer to Amended Complaint ¶¶ 29 and 31, ECF No. 28; Medicredit's Answer to Amended Complaint ¶ 23, Exhibit P-16; Exhibit P-17
[107] Exhibit P-16 at NP0025 – NP0026; Exhibit P-17 at MC0066

communications to occur and refused to pay.[108] Nonetheless, Defendants continued calling and sending collection letters to collect the alleged debts.[109]

It is undisputed that NPAS and Medicredit each communicated with Young to collect the debts on multiple occasions after they knew Young was contesting the debts and thus refusing to pay. Each of those communications violated the plain language of the FDCPA.[110] Young is therefore entitled to summary judgment on this issue.

**Plaintiff reserves the determination of damages and other claims for a trial by jury**

By this motion Young seeks only an award of partial summary judgment against the Defendants for the FDCPA violations discussed herein. The determination of other FDCPA and state law violations and tort claims and the question of appropriate actual damages as requested in the Complaint, are reserved for trial by jury.[111] After these determinations of liability and damages, Plaintiff will then seek an award of her attorney's fees and costs as provided by the FDCPA.[112]

CONCLUSION

Under the Fair Debt Collection Practices Act no means no. Nonetheless, Defendants persisted in collecting debts that were prohibited by law; communicated with Young after knowing she was represented by counsel and refused to pay; and grossly misrepresented the

---

[108] *Bishop v. I.C. System, Inc.,* 713 F.Supp.2d 1361, 1367 (M.D.Fla. 2010)
[109] *See* Young Decl.; Exhibits P-1, P-2, P-3, P-5, P-6, P-7, P-16, P-17; NPAS' Answer to Am. Complaint ¶¶ 25 and 26, ECF No. 28; Medicredit's Answer to Am. Complaint ¶¶ 20 and 22, ECF No. 27
[110] 15 U.S.C. § 1692c(c)
[111] *Kobs v. Arrow Service Bureau, Inc*., 134 F.3d 893, 895-896 (7th Cir. 1986); *Sibley v. Fulton DeKalb Collection Services*, 677 F.2d 830 (11th Cir. 1982)
[112] 15 U.S.C. § 1692k(a)(3)

character, amount, and legal status of the debts. Defendants even demanded and received payments from Young under the threat of withholding ongoing medical care she desperately needed and was legally entitled to receive.

These facts are not in dispute. Young was never obligated to pay the Defendants but they refused to accept no in response to their collection efforts. Defendants' obstinately and undisputedly violated the plain language of the FDCPA and that entitles Plaintiff to summary judgment under sections 1692f(1), 1692e(2)(A), 1692e(10), 1692c(a)(2) and 1692c(c) of the Fair Debt Collection Practices Act.

DATED 8/22/2017                         /s/ Eric Stephenson
                                        *Attorney for Plaintiff*

INDEX OF EXHIBITS

Exhibit P-1    NPAS Collection Letter (YNG00005 – YNG00006)

Exhibit P-2    NPAS Collection Letter (YNG00007 – YNG00008)

Exhibit P-3    NPAS Collection Letter (NP0102 – NP0103)

Exhibit P-4    Lester Perry Letter (YNG00001)

Exhibit P-5    NPAS Collection Letter (YNG00010 – YNG00011)

Exhibit P-6    NPAS Collection Letter (YNG00012 – YNG00013)

Exhibit P-7    NPAS Collection Letter (YNG00014 – YNG00015)

Exhibit P-8    Medicredit Collection Letter (YNG00016 – YNG00017)

Exhibit P-9    Medicredit Collection Letter (YNG00018 – YNG00019)

Exhibit P-10    Medicredit Collection Letter (MC0086 – MC0087)

Exhibit P-11    Transunion Credit Report Excerpts (YNG00026, YNG00030, and YNG000031)

Exhibit P-12    Transunion Credit Report Excerpts (YNG00064, YNG00067, and YNG00068)

Exhibit P-13    Dawn Atkin Letter (YNG000024)

Exhibit P-14    Lester Perry Letter (YNG00002)

Exhibit P-15    Dawn Atkin Letters (YNG000020 and YNG000022)

Exhibit P-16    Medicredit Collection Notes, Call History Report, Letter (MC0001 – MC0089)

Exhibit P-17    NPAS Collection Notes (NP0001 – NP0072)

CERTIFICATE OF SERVICE

I hereby certify that on 8/22/2017 I filed the foregoing Motion FOR SUMMARY JUDGMENT through this court's electronic filing system which automatically notifies counsel of record for the Defendants.


/s/ Eric Stephenson
*Attorney for Plaintiff*