Eric Stephenson (9779)
STEPHENSON LAW FIRM
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111
(844) 529-2112
eric@utahjustice.com

Luke Wallace (*pro hac vice*)
David Humphreys (*pro hac vice*)
HUMPHREYS WALLACE HUMPHREYS P.C.
9202 South Toledo Ave.
Tulsa, OK 74137
918-747-5300
luke@hwh-law.com
david@hwh-law.com

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ROBYN YOUNG,<br><br>        Plaintiff,<br><br>vs.<br><br>NPAS, INC. and MEDICREDIT, INC.,<br><br>        Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Case Number: 2:16-cv-01104<br><br>Judge: Clark Waddoups |

Plaintiff Robyn Young, by and through her attorneys,  and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully submits this reply memorandum in support of her request for summary judgment.

## INTRODUCTION

This matter is far more simple than Defendants want this Court to believe. Young demonstrated Defendants violated the FDCPA in multiple ways and Defendants cannot produce any credible evidence otherwise.

For example, it is undisputed that both Defendants attempted to collect debts from Young that were never her obligation to pay because they were subject to payment only through

worker's compensation. Each of those attempts violated the Fair Debt Collection Practices Acts'
strict liability prohibition on collecting amounts that were not permitted by law.

It is also undisputed that both Defendants falsely represented that Young owed the debts
when she did not. Those representations—and there were many—violated the FDCPA's strict
liability prohibitions on making false representations about the character, amount, or legal status
of the debts and using any false representations or deceptive means to collect the debts.

It is further undisputed that Defendants both contacted Young in connection with the
debts after they knew she was represented by an attorney and refused to pay. The FDCPA
prohibits such contacts.

Defendants conceded that they attempted to collect the debts Young never owed. It does
not matter whether Young—a victim of a brutal attack that left her with memory problems—
remembers specific calls because Defendants' own records prove those calls occurred. Numerous
collection letters also confirm the collection attempts and false representations repeatedly took
place. It also does not matter whether Defendants had notice Young was not responsible for the
debts because most of the violations at issue are strict liability. Even if it did matter, the
undisputed facts show that Defendants had notice the debts were subject to worker's
compensation when they attempted to collect from Young. Defendants simply failed to properly
handle the notifications.

Even so, Medicredit mounts no other defense. NPAS, on the other hand, attempts to
argue it is not a debt collector under the FDCPA even though the evidence shows otherwise.
Indeed, NPAS' primary business purpose is debt collection of accounts it did not originate,
NPAS collected in a name that indicated a third party was collecting, NPAS treated the accounts
as though they were in default, and NPAS attempted to collect the accounts after other collection
efforts failed. Under the undisputed facts, NPAS squarely fits the definition of a debt collector
regardless of its desire to unilaterally exempt itself from the FDCPA.

PLAINTIFF'S RESPONSE TO DEFENDANTS ADDITIONAL STATEMENT OF
UNDISPUTED MATERIAL FACTS

1. On July 22, 2014, a debt of $431.76 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on June 3, 2014 (i.e., Acct. 500924860).

   **Response: No dispute.**

2. On February 27, 2015, a debt of $2,539.88 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on May 23, 2014 (i.e., Acct. 500904683).

   **Response: No dispute.**

3. On June 11, 2015, a debt of $181.05 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on February 23, 2015 (i.e., Acct. 501451437).

   **Response: No dispute.**

4. On December 28, 2015, a debt of $952.04 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on November 2, 2015 (i.e., Acct. 501934604).

   **Response: Disputed. The amount of the November 2, 2015 debt placed for collection with NPAS on December 28, 2015 was $952.84.**[1]

5. On February 29, 2016, a debt of $847.36 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on February 2, 2016 (i.e., Acct. 502106966).

   **Response: No dispute.**

6. On August 2, 2016, a debt of $713.89 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on May 29, 2016 (i.e., Acct. 502361159).

   **Response: No dispute.**

7. On October 11, 2014, Acct. 500904683 was first placed with Medicredit.

   **Response: No dispute.**

8. On February 5, 2016, Acct. 501451437 was first placed with Medicredit.

   **Response: No dispute.**

_____

[1] Exhibit P-17 at NP0043

9. On February 5, 2016, Acct. 501451437 was first placed with Medicredit.

   **Response: No dispute.**

10. On March 4, 2016, Acct. 501934604 was first placed with Medicredit.

    **Response: No dispute.**

11. On April 25, 2016, Acct. 502106966 was first placed with Medicredit.

    **Response: No dispute.**

PLAINTIFF'S RESPONSE TO DEFENDANTS' STATEMENT OF ADDITIONAL
ELEMENTS AND MATERIAL FACTS

In addition to proving that a defendant violated a provision of the FDCPA, a plaintiff seeking to recover for a violation of the FDCPA must also prove the following three additional elements:

First, that plaintiff is a natural person who is a "consumer" within the meaning of the FDCPA.

Material Facts Regarding This Element: None.

**Response: No dispute.**

Second, that the "debt" arises out of a transaction entered primarily for personal, family or household purposes.

Material Facts Regarding This Element: None.

**Response: No dispute.**

Third, that defendant is a "debt collector" within the meaning of the FDCPA.

**Response: Disputed. Most of the prohibitions of the FDCPA require the Defendants to be considered "debt collectors" as it defines that term but some prohibitions found in the FDCPA apply to creditors and to any "person" rather than just debt collectors.[2]**

---

[2] *See* 15 U.S.C. § 1692a(6); 15 U.S.C. § 1692j

**Plaintiff's Response to Defendants' Material Facts Regarding This Element**

1. NPAS is not a debt collection company or in the business of collecting defaulted medical consumer debts.

   **Response: Objection. Defendants have stated a conclusion, not a fact. Moreover, the undisputed facts rebut their conclusion. NPAS conceded it only collects accounts after St. Mark's own internal collection efforts fail.[3] For example, it is undisputed that account no. 4683 was in default when it was assigned to NPAS for collection since it was first assigned to Medicredit who then attempted to collect it but failed.[4] Because NPAS obtained the debt when it was in default, NPAS is in the business of collecting defaulted consumer debts and is a debt collector under the FDCPA.[5] NPAS also collected other accounts in a name that would indicate a third party is collecting which makes NPAS a debt collector under the purview of the FDCPA.[6] NPAS is not entitled to the creditor exclusion as it did not originate the debts it sought to collect.[7] Under the law and facts of this case, NPAS is a debt collection company and in the business of collecting defaulted medical consumer debts.**

2. NPAS conducts only "early out" collections. "Early out" collections involve attempts to collect on unpaid accounts prior to the time that the account is deemed to be default.

   **Response: Objection. Defendants have stated a conclusion, not a fact. The undisputed facts also rebut that conclusion. There is no definition of "early out" collections in the FDCPA. "Early out" is an artificial construct unilaterally created**

---

[3] Wright NPAS Dep. 16:3-17:11
[4] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep. 73:2-8; Exhibits P-1 – P3 and P-5 – P-7 and P-19
[5] 15 U.S.C. § 1692a(6)
[6] *Id.*
[7] 15 U.S.C. § 1692a(4)

by Defendants to avoid FDCPA liability while engaging in debt collections.[8]
Moreover, NPAS collected account no. 4683 after it was deemed to be in default by
St. Mark's who first assigned that account to Medicredit on October 11, 2014.[9]

3.  As a result, NPAS Inc.'s [sic] is not a "debt collector" and not subject to the requirements
    of the FDCPA.

    **Response: Objection. Defendants have stated a conclusion, not a fact. The
    undisputed facts also rebut that conclusion. NPAS meets the definition of a debt
    collector and is required to comply with the FDCPA because it obtained the
    accounts, and in particular the 4683 account, for collections after other collection
    efforts failed.[10] NPAS is also a debt collector because its principal business purpose
    "is the collection of any debts" and it is not eligible for any exclusions from that
    definition because it collected in a name that indicated a third party was collecting.[11]**

4.  Accordingly, NPAS is not required to comply with the FDCPA because it does not meet
    the definition of a "debt collector" under the FDCPA.

    **Response: Objection. Defendants have stated a conclusion, not a fact. The
    undisputed facts also rebut that conclusion. NPAS meets the definition of a debt
    collector and is required to comply with the FDCPA because it obtained the
    accounts, and in particular the 4683 account, for collections after other collection
    efforts failed.[12] NPAS is also a debt collector because its principal business purpose
    "is the collection of any debts" and it is not eligible for any exclusions from that
    definition because it collected in a name that indicated a third party was collecting.[13]**

---

[8] Wright NPAS Dep. 57:23-59:16
[9] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep. 73:2-8
[10] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep.16:8-17:11
[11] Wright NPAS Dep. 22:24-23:6 and 73:2-8; Exhibits P-1 – P3 and P-5 – P-7 and P-19
[12] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep.16:8-17:11
[13] Wright NPAS Dep. 22:24-23:6 and 73:2-8; Exhibits P-1 – P3 and P-5 – P-7 and P-19

5.  NPAS's performance of "early out" collection services for certain of its clients, including the services provided with regarding to the unpaid medical debts of Plaintiff Robyn Young ("Plaintiff"), is governed, in part, by (1) an Intercompany Services Agreement ("ISA") between NPAS, on the one hand, and HSS Systems, LLC ("HSS"), on the other, and (2) an Amended and Restated Master Services Agreement ("MSA") between non-party Parallon Business Solutions, LLC, on behalf of itself and certain affiliates, on the one hand, and non-party Mountain Division, Inc., on behalf of itself and as a disclosed agent for certain facilities, on the other.

    **Response: Disputed. NPAS collected debts on behalf of St. Mark's Hospital who is not a signatory on either of the agreements referenced by Defendants.[14]**

6.  Under the MSA, NPAS and HSS are both affiliates of Parallon Business Solutions, LLC.

    **Response: This fact is not material to the current motion.**

7.  Under the MSA, St. Mark's Hospital is a facility which receives services from NPAS and HSS.

    **Response: This fact is not material to the current motion. Moreover, St. Mark's Hospital is not a signatory to the agreements referenced by NPAS.[15]**

8.  Under the MSA, NPAS provides "Early Out Collections" for St. Mark's Hospital, which are defined as: "Collection of early stage, non-delinquent balances that are due from the patient/guarantor. Unless prohibited by State law, Service Provider performs these services in the name of the hospital or physician."

    **Response: Objection. It is irrelevant how the MSA defines the term "Early Out Collections" since the FDCPA has no such definition or exclusion.[16] Furthermore,**

---

[14] Wright Decl., D-1, ¶ 3
[15] *Id*.
[16] 15 U.S.C. § 1692a

**St. Mark's Hospital is not a signatory on the agreement referenced by Defendants.[17]**
**Finally, if the MSA requires NPAS to "perform services in the name of the hospital"**
**NPAS breached the MSA since it collected from Young in its own name instead of in**
**the name of St. Mark's Hospital.[18]**

9.  As part of the services that HSS provides for St. Mark's Hospital, it contracts certain
    services with NPAS via the ISA.

    **Response: This fact is not material to the current motion.**

10. Under the terms of the ISA, NPAS agreed to provide "early out" collection services to
    facilities, including St. Mark's Hospital.

    **Response: Objection. Defendants have stated a conclusion, not a fact. It is also**
    **irrelevant how the ISA defines the term "early out" collections services since the**
    **FDCPA has no such definition or exclusion.[19] Furthermore, St. Mark's Hospital is**
    **not a signatory on the agreement referenced by Defendants.[20] Finally, there is**
    **evidence NPAS breached the ISA by collecting debt it obtained when that debt was**
    **past due.[21]**

11. The "early out" collection services provided by NPAS pursuant to the ISA are provided
    "as an extension of the Client Hospital's business office and not as a 'debt collector' as
    that term is defined under the federal Fair Debt Collection Practices Act, 15 U.S.C. §
    1692 et seq. ("FDCPA") and analogous state laws."

    **Response: Objection. Defendants have stated a conclusion, not a fact. It is also**
    **irrelevant what the ISA defines as "early out." It is the FDCPA that governs**

---

[17] Wright Decl., D-1, ¶ 3
[18] Exhibits P-1 – P3 and P-5 – P-7 and P-19
[19] 15 U.S.C. § 1692a
[20] Wright Decl., D-1, ¶ 3
[21] Exhibits P-1 – P3 and P-5 – P-7 and P-19; Wright Medicredit Dep. 35:3-8, 48:1-11; Wright
NPAS Dep. 73:2-8

**whether or not NPAS is a debt collector. NPAS may not unilaterally contract around the statute.[22] Additionally, the undisputed evidence shows NPAS conducted business as a debt collector because it obtained the accounts, and in particular the 4683 account, for collections after other collection efforts failed.[23] NPAS is also a debt collector because its principal business purpose "is the collection of any debts" and it is not eligible for any exclusions from that definition because it collected in a name that indicated a third party was collecting.[24]**

12. Indeed, the ISA expressly provides that:

Because NPAS, Inc. is providing services on current patient accounts, which are not in default at the time that they are obtained by NPAS, Inc., NPAS, Inc. is not a debt collector within the meaning of the FDCPA and analogous state laws. HSS understands and agrees that NPAS, Inc. is in the business of servicing accounts that are not in default when NPAS, Inc. takes responsibility for the accounts, and that NPAS, Inc. cannot render services to HSS on Defaulted Accounts.

**Response: Objection. Defendants have stated a conclusion, not a fact. It is also irrelevant what the ISA defines as "early out." It is the FDCPA that governs whether or not NPAS is a debt collector. NPAS may not unilaterally contract around the statute.[25] Additionally, the undisputed evidence shows NPAS conducted business as a debt collector because it obtained the 4683 account for collections after it was in default.[26] NPAS is also a debt collector because its principal business purpose "is the collection of any debts" and it is not eligible for any exclusions from**

---

[22] 15 U.S.C. § 1692a
[23] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep.16:8-17:11
[24] Wright NPAS Dep. 22:24-23:6 and 73:2-8
[25] 15 U.S.C. § 1692a
[26] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep. 73:2-8

that definition because it collected in a name that indicated a third party was collecting.[27]

13. In order to ensure NPAS' status as solely a provider of "early out" collection services, HSS warranted that "it will not place with, transmit to, assign, or otherwise provide to NPAS, Inc. for servicing any Defaulted Accounts" and that HSS would not establish or maintain any practices or procedures "that are inconsistent with the exclusion of NPAS, Inc. as a debt collector, as defined in the FDCPA…"

**Response: This is not a material fact. Furthermore, there is evidence HSS breached its warranty since account no. 4683 was placed with NPAS after it was defaulted.[28]**

14. As part of the ISA, NPAS "relie[s] upon HSS's representations that any accounts transmitted to NPAS, Inc. for servicing are not in default at the time they are transmitted to NPAS, Inc."

**Response: This is not a material fact. Moreover, there is no evidence NPAS actually relied on HSS' representations or that any such reliance was reasonable. This is especially true since there is evidence HSS breached its warranty by placing account no. 4683 with NPAS after it was defaulted.[29]**

## ARGUMENT

**Defendants conceded they attempted to collect amounts that were not permitted by law in violation of the plain language of the FDCPA**

It is undisputed in this case that Young never owed the debts Defendants tried to collect. Under Utah law, medical expenses incurred within the course and scope of employment are never the obligation of the employee.[30] Young's employer is solely responsible for those

---

[27] Wright NPAS Dep. 22:24-23:6 and 73:2-8
[28] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep. 73:2-8
[29] Wright Medicredit Dep. 35:3-8, 48:1-11; Wright NPAS Dep. 73:2-8
[30] Utah Code Ann. § 34A-2-401(2)

payments.[31] Nonetheless, Defendants attempted to collect from Young. In their own words, "NPAS serviced six (6) accounts regarding Plaintiff's unpaid medical bills" and "Medicredit serviced four (4) accounts regarding Plaintiff's unpaid medical bills."[32]

Defendants did not rebut the fact that they attempted to collect debts they were never permitted by law to collect.[33] Instead they obscure the issue by claiming—falsely—that they did not have notice the debts they were collecting were covered under worker's compensation.[34] Defendants fail to appreciate that they had multiple notices about worker's compensation even though such notice was never required to ground FDCPA liability for these violations. The FDCPA is a strict liability statute that "does not ordinarily require proof of intentional violation."[35] Defendants also intentionally did nothing to determine whether or not Young owed the accounts and could not identify "even one account that was not part of the [worker's compensation]."[36] Even with clear notice the debts were worker's compensation accounts, Defendants just stuck their head in the sand and demanded full balance payments.[37] They are so unconcerned about violating the strict liability portions of the FDCPA, Defendants don't even have a process to scrub their collection accounts for worker's compensation debts.[38]

Regardless, Defendants knowledge or lack of knowledge does nothing to negate these violations. As a matter of law Young never owed the debts and the FDCPA strictly prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the

---

[31] *Id.*
[32] Def. Mem. in Opp'n to Mot. for Summ. J. at 37 and 39
[33] Wright Medicredit Dep. 58:15-59:6
[34] Compare Def. Mem. in Opp'n to Mot. for Summ. J. at 34-36 to Wright Medicredit Dep. 75:12-76:6
[35] *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010)(*citing* 15 U.S.C. § 1692k; *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010))
[36] Wright Medicredit Dep. 94:5-95:24
[37] Wright NPAS Dep. 74:11-16
[38] Wright NPAS Dep. 94:18-95:3, 110:14-18, and 114:13-20

debt or permitted by law."[39] Under the plain language of the statue, the prohibition squarely covers each and every one of Defendants' collection attempts.[40] It is undisputed Defendants attempted to collect debts they were strictly prohibited by law from collecting and each of those attempts violated the Fair Debt Collection Practices Act.

**Defendants concede they made false representations about the character, amount, or legal status of the debts and used false representations or deceptive means to collect the debts**

As a necessary part of their efforts to collect the worker's compensation debts, Defendants  falsely represented Young was responsible for payment of those debts.[41] For example, in collecting the 1159 account NPAS explicitly stated falsely that Young was "obligated to pay for the services provided …" and that it was offering her a "FINAL opportunity to settle your balance."[42] NPAS' letters seeking attorney contact information also represented Young owed balances on accounts 4604, 6966, and 4683 when she did not.[43]

Medicredit similarly represented that Young owed specific balances on the same accounts (4604, 6966, and 4683) and owed payment in full.[44] It affirmatively warned Young that each account was "placed with this agency with the full intention of collecting on this account(s)."[45] Medicredit even went the extra mile in its false representations by reporting to TransUnion that Young was responsible for two of the debts (4604 and 6966).[46]

---

[39] 15 U.S.C. § 1692f(1)
[40] *Id.*; *Tito Pollice v. Nat'l Tax Funding,* 225 F.3d 379 at 407 (3rd Cir. 2000); *Tuttle v. Equifax Check*, 190 F.3d 9, 13-15 (2d Cir. 1999)
[41] *See* Exhibits P-1 – P-3 and P-5 – P-10; *See also* Wright NPAS Dep. 96:20-98:3
[42] Exhibit P-7 (*emphasis in original*)
[43] Exhibits P-1 – P-3
[44] Exhibits P-8 – P-10
[45] Exhibits P-8 – P-10
[46] Wright Medicredit Dep. 137:17-25; Young Decl. ¶¶ 18 and 22-25 ECF No. 32-18; Exhibit P-11; Exhibit P-12

Medicredit also falsely characterized distinctly different accounts as one single account (account no. 29169038) when trying to collect from Young.[47] To the least sophisticated consumer, stating that one debt is owed when there are actually multiple debts is a deception that speaks for itself. Even the Defendants consider it to be a "mischaracterization" of the facts to treat multiple accounts as "one amorphous omnibus account."[48]

In any event, by representing Young owed the debts when she did not, and by representing multiple accounts as one amorphous omnibus account, Defendants violated section 1692e(2)(A) of the Fair Debt Collection Practices Act which strictly prohibits falsely representing the character, amount, or legal status of the debts. The same false representations also violated section 1692e(10) of the Fair Debt Collection Practices Act which strictly prohibit the use of any false representations or deceptive means to collect debt.

**Defendants violated the FDCPA by communicating with Young knowing she was represented by an attorney and refused to pay the debts**

Under the FDCPA, debt collectors are prohibited from communicating about a debt if they know the consumer is represented by counsel.[49] Under the Act, "a debt collector may not communicate with a consumer in connection with the collection of any debt—

(2) if the debt collector knows the consumer is represented by an attorney."[50]

Collectors are also prohibited from communicating with debtors after being notified the debtor refuses to pay a debt.[51] Despite these prohibitions, NPAS sent Young a collection letter demanding payment in full on account number 1159 on August 27, 2016 even though it knew on August 2, 2016 that Young was represented by counsel with respect to that account and therefore

---

[47] Exhibits P-8, P-9, and P-10
[48] Def. Mem. in Opp'n to Mot. for Summ. J. at 35
[49] 15 U.S.C. § 1692c(a)(2)
[50] 15 U.S.C. § 1692c(a)
[51] 15 U.S.C. § 1692c(c)

was refusing to pay.[52] NPAS then placed collection calls to Young on the 1159 account on September 16th, 20th, 21st, and 23rd and sent another collection letter on September 24, 2016.[53] In October, NPAS made even more calls to collect that account.[54]

NPAS knew of the attorney representation and refusals to pay on the 4683 account at least as early on November 23, 2015 but then sent a letter requesting contact information for Young's attorney on May 17, 2016 which  was sent "in connection with the collection of any debt" as it explicitly stated a balance due and represented Young was responsible for the debt.[55] That letter was also a deceptive and transparent attempt to collect since NPAS already had the information the letter purported to request. And rather than stop collecting when it knew Young was represented by counsel, NPAS spoke with Young's attorney to demand she contact Young in an attempt to collect the 4683 account.[56]

NPAS sent similar letters on the 4604, 6966, and 1437 accounts. For example, NPAS sent a letter in connection with collecting account number 4604 on January 20, 2016 even though it knew Young was represented by counsel with respect to that account on December 28, 2015.[57] NPAS sent a letter in connection with collecting account number 6966 on March 10, 2016 even though it knew on February 29, 2016 that Young was represented by counsel with respect to that account.[58] NPAS sent a letter in connection with collecting account number 1437 on November 11, 2015 even though it knew Young was represented by counsel with respect to that account on October 20, 2015 .[59]

---

[52] *Compare* NP0070 and Wright NPAS Dep. 189:15-18 to Exhibit P-5 and Wright NPAS Dep.189:7-18 and 190:24-191:2
[53] Exhibit P-17 at NP0071-NP0072; Wright NPAS Dep.191:8-13
[54] Exhibit P-17 at NP0072
[55] Exhibit P-3; 15 U.S.C. § 1692c(a)
[56] Wright NPAS Dep. 167:21-168:21; Exhibit P-17 at NP0041
[57] *Compare* Exhibit P-17 at NP0044 and Wright NPAS Dep. 181:21-182:11 to Exhibit P-1 and Wright NPAS Dep. 182:9-11
[58] Wright NPAS Dep. 188:5-7; Exhibit P-17 at NP0067-68 and Exhibit P-2
[59] Exhibit P-17 at NP0026 and Exhibit P-20

Defendants will say their letters were nothing more than requests for information but the FDCPA disagrees. Once the collector knows the consumer is represented by counsel or refuses to pay they cannot make additional contact.[60] That is especially true when the collector "has knowledge of, or can readily ascertain, such attorney's name and address" which NPAS undeniably had as of the date of each of those letters.[61]

Incredibly, NPAS even transferred accounts 6966, 4683, and 1437 to Medicredit for collection after it was notified Young was represented[62] and then called Young to collect after this lawsuit was filed.[63] NPAS just wouldn't stop even knowing an attorney was involved.

Medicredit is no better. Medicredit knew Young was represented on February 5, 2016.[64] It then sent collection letters for the 6966 account on May 2, 2016 and on the 4683 account on July 11, 2016.[65] It also called Young to collect the debts at various times after it knew of the attorney representation and refusals to pay, including on March 4, 2016 and April 25, 2016.

For account number 4604, Medicredit was aware Young was represented on March 4, 2016 but nonetheless called Young on March 8th, 14th, 28th, April 6th, 11th, 19th, and 22nd.[66] And although Medicredit conceded each of those calls occurred after it knew the debt was subject to a worker's compensation claim and that Young was represented, it still didn't stop collection efforts until "the day we got [Young's] lawsuit" in October of 2016.[67] Medicredit even reported to the credit bureaus after it knew of the attorney representation and refusals to pay but did not report the debts as in dispute as required by law.[68] And because Medicredit treats all of

---

[60] 15 U.S.C. § 1692c(a)(2) and 15 U.S.C. § 1692c(c) *respectively*
[61] 15 U.S.C. § 1692c(a)(2)
[62] *Compare* Exhibit P-16 at MC0001 to NP0067, NP0034, and NP0026
[63] Wright NPAS Dep. 195:4-196:24; Exhibit P-18; Young Dep. 89:20 – 90:7
[64] Exhibit P-16 at MC0066  The attorney representation was confirmed again on March 4, 2016. Wright Medicredit Dep. 135:25-136:5; Exhibit P-16 at MC0056
[65] Exhibit P-9; Exhibit P-10; Medicredit's Answer to Am. Complaint ¶ 20, ECF No. 27
[66] Wright Medicredit Dep. 135:25-137:13 and 138:16-22
[67] Wright Medicredit Dep. 142:7-13
[68] Wright Medicredit Dep. 137:14-25; Exhibit P-16 at MC0004; Exhibit P-11; Exhibit P-12

its accounts as one amorphous omnibus account, it cannot claim it didn't have notice of the attorney representation when these events occurred.

**NPAS is a debt collector since it only collects debts after St. Mark's efforts to collect fail**

St. Mark's Hospital has its own collection "processes in place that take customer service phone calls and send out statements well prior to it [accounts] ever coming to NPAS."[69] It is only when St. Mark's efforts to collect fail that St. Mark's then turns accounts over to NPAS for collections.[70] That is why some accounts are turned over for collections 45 days after services are performed while other accounts are turned over for collections as much as six months later.[71]

As a matter of law, assigning accounts to NPAS after its own attempts to collect fail, makes NPAS a debt collector under the FDCPA since it defines a debt collector as, "any person … in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."[72] Furthermore, by assigning the debts only after failing to collect on its own, St. Mark's deemed the accounts to be in default which negates any argument that NPAS is collecting current accounts. "[T]he hospital, in referring the patient account to a debt collection agency, deemed her patient account to be in default."[73] Accordingly, NPAS is a debt collector under the FDCPA and does not qualify for any exclusion.

The 4683 account is a prime example of how NPAS collects debts after they are in default. The 4683 account fell into default and was assigned to Medicredit for collections on October 11, 2014.[74] As a result of that assignment, Medicredit—who only collects defaulted

---

[69] Wright NPAS Dep. 16:8-10
[70] Wright NPAS Dep. 17:6-11
[71] Wright NPAS Dep.16:20-17:11
[72] 15 U.S.C. § 1692a(6)
[73] *Fausz v. NPAS, Inc.*, 237 F.Supp.3d 559, 569 (2017)
[74] Wright Decl., ¶ 21; Defendants' Response to Statement of Undisputed Facts ¶ 18; Exhibit P-16 at MC0001

accounts—engaged in a collection campaign involving various telephone calls and collection letters to collect from Young.[75] Medicredit even sent Young a final notice letter on October 11, 2014 demanding payment in full.[76] It was only months later, after Medicredit's demands for payment failed, that the past due debt was eventually reassigned to NPAS on February 27, 2015.[77] That was at least 139 days after the 4683 account fell delinquent and 280 days after the medical services were performed. By any measure, that renders NPAS a debt collector under the plain language of the FDCPA.[78]

Although NPAS squarely fits the FDCPA's definition of debt collector, Defendants have nonetheless argued that it falls under the exclusion for creditors even though that argument patently ignores the undisputed fact that NPAS obtains its accounts, and the 4683 account in particular, well-after St. Mark's fails to collect.[79] NPAS also disregards that it obtained a second assignment of the 4683 account on August 27, 2015 after it failed to collect the first time.[80] That subsequent assignment alone negates Defendants' argument as the debt was inescapably in default when that subsequent assignment occurred since it happened after St. Mark's, NPAS, and Medicredit all repeatedly attempted and failed to collect the debt after demanding payment.

NPAS itself confirmed the account was in default status when it illegally demanded payment of the full balance on October 26, 2015 and stated, "[d]espite our efforts, we have been unable to secure payment on this account."[81] In other words, the account was past due. And, NPAS reinforced that notion by placing the words "ATTENTION REQUIRED" in all capital

---

[75] Wright Medicredit Dep. 35:3-8, 48:1-11, 101:5-12, and 122:10-13; Exhibit P-16 at MC0072 – MC0076
[76] Exhibit P-16 at MC0074
[77] Wright Decl., ¶ 15; Defendants' Response to Statement of Undisputed Facts ¶ 4; NP0011; Wright NPAS Dep. 90:17-91:8
[78] 15 U.S.C. § 1692a(6)
[79] Wright NPAS Dep.16:8-17:11
[80] Exhibit P-3; Wright Decl. at 60, ECF No. 62-2; Wright NPAS Dep. 90:17 – 91:8
[81] Exhibit P-19; Wright NPAS Dep. 92:14 – 93:7

letters as a heading in the letter and instructing Young that she should "take advantage of this opportunity to resolve your balance."[82] Those are not the words or tactics employed to collect a current debt. Further confirming that debt was past due is the frequently asked question on page two of that letter that notifies Young "[p]ayment is expected within thirty days of submitting a claim."[83] That time period expired well-before NPAS obtained the debt.

It is undisputed NPAS obtains accounts, and the 4683 account in particular, after they are in default.[84] St. Mark's only sends accounts to NPAS after it fails to collect[85] and both Medicredit and NPAS failed to collect the 4683 account after repeated demands for payment.[86] A total of three assignments of the 4683 account took place after the account was in default. The default therefore continued throughout NPAS' subsequent collection efforts, making NPAS a debt collector under the FDCPA.[87] Accordingly, NPAS cannot avail itself of the exclusion and is therefore a debt collector subject to all the prohibitions and requirements of the FDCPA.

**NPAS cannot be shielded by the creditor exclusion because NPAS is not a creditor**

NPAS asserted that it is exempt from the FDCPA under the exclusion for creditors while disregarding that the exclusion does not apply when a creditor collects under a different name. The definition of a debt collector specifically "includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts."[88] Under the required broad reading of the FDCPA, "the definition of debt collector pursuant to § 1692a(6)(F)(iii) includes any non-

---

[82] Exhibit P-19
[83] *Id.*
[84] *Compare* Wright Decl., ¶ 21; Defs' Response to Statement of Undisputed Facts ¶ 18; MC0001 to Wright Decl., ¶ 15; Defs' Response to Statement of Undisputed Facts ¶ 4; NP0011
[85] *See also* Wright NPAS Dep.16:8-17:11
[86] Wright Decl. at 186-190; Wright NPAS Dep. 92:14-93:7
[87] *Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 88 (2d Cir. 2003)
[88] 15 U.S.C. § 1692a(6)

originating debt holder that either acquired a debt in default or *has treated the debt as if it were in default* at the time of acquisition."[89] In other words, the only way NPAS could be entitled to this exclusion is by collecting the debts in St. Mark's name and treating the debts as current rather than in default. By doing otherwise it negated the exclusion.[90]

And it is undisputed that NPAS repeatedly and consistently indicated "that a third person is collecting or attempting to collect" the debts.[91] NPAS' name, address, and telephone number all prominently appeared on NPAS' collection letters.[92] NPAS even held itself out as a distinct third party collecting "on behalf of St. Mark's Hospital" when calling to collect from Young.[93] Under the least sophisticated consumer standard that applies to FDCPA actions, those indications were sufficient for NPAS to fall under the definition of a debt collector rather than a creditor. "The triggering of the FDCPA does not depend on whether a third party is in fact involved in the collection of a debt, but rather whether a least sophisticated consumer would have the false impression that a third party was collecting the debt."[94]

NPAS also disregards that it cannot be shielded by the creditor exclusion since it does not fit the definition of a creditor. A creditor is, "any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another."[95] Congress intended the FDCPA to protect borrowers from "*third persons* who regularly collect debts for others."[96] That is exactly what happened here.

---

[89] *Fausz v. NPAS, Inc*., 237 F.Supp.3d 559, 568 (2017) (*citing Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (Cir. 2012))
[90] 15 U.S.C. § 1692a(6)
[91] 15 U.S.C. § 1692a(6)
[92] Exhibits P-1 – P3 and P-5 – P-7 and P-19
[93] Wright NPAS Dep. 196:17-24; Young Dep. 89:20 – 90:7
[94] *Maguire v. Citicorp Retail Services, Inc*., 147 F.3d 232, 236 (Cir. 1998)
[95] 15 U.S.C. § 1692a(4)
[96] S.Rep. No. 95-382, 95th Cong. 1st Sess., reprinted in 1977 U.S.C.C.A.N. 1695, 1697 (*emphasis added*)

But NPAS did not actually attempt to define itself as a creditor. Instead, it seeks to elude both definitions by relying solely on certain contractual language even though such a result is contrary to both the FDCPA and public policy. Courts have rejected similar attempts because the result Defendant seeks exalts form over substance.[97] "To allow such an entity to define itself out of either category would mean that the intended protection of the FDCPA is unavailable. Both the statutory language and legislative history of the FDCPA establish that such an entity is either a creditor or a debt collector and its collection activities are covered under the FDCPA accordingly."[98]

NPAS has to be either a creditor or a debt collector. It cannot escape the spirit of the FDCPA by unilaterally defining itself out of the statute's coverage. To hold otherwise would create a *de facto* third category that does not exist under the FDCPA. It would also contravene the purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors" if a collector could unilaterally contract away FDCPA application to its conduct.[99] "It is doubtful that such a result was intended by Congress when it drafted § 1692a(6)(F)(iii)."[100]

This is especially true since NPAS conceded it only collects accounts after St. Mark's own internal collection efforts fail.[101] By definition, if St. Mark's attempted, but failed, to collect the debts, those debts were defaulted when NPAS later received them for further collection attempts. The question here is, which definition—debt collector or creditor— fits NPAS better, and the obvious answer is debt collector.

[97] *See Winterstein v. CrossCheck In*c., 149 F. Supp. 2d 466, 470 (N.D. Ill. 2001)
[98] *Bridge v. Ocwen Federal Bank, FSB*, 681 F.3d 355, 359 (Cir. 2012)
[99] 15 U.S.C. § 1692(e)
[100] *Magee v. AllianceOne, Ltd*., 487 F.Supp.2d 1024, 1028 (S.D.Ind. 2007)
[101] Wright NPAS Dep. 16:3-17:11

CONCLUSION

It is undisputed both Defendants engaged in conduct that violated multiple provisions the FDCPA, including:

- attempting to collect debts that were not permitted by law,[102]
- falsely representing that Young owed the debts when she owed nothing as a matter of law,[103]
- contacting Young after she refused to pay,[104] and
- contacting Young in connection with collection of the debts after they knew she was represented by counsel.[105]

Young has also demonstrated that there is no credible dispute whether the Defendants are covered by the Act. Medicredit concedes it is covered by the Act, while NPAS' attempt to unilaterally exempt itself fails since it squarely fits the definition of a debt collector and is not entitled to any exclusion. NPAS' primary business purpose is debt collection of accounts it did not originate, NPAS collected after St. Mark's efforts to collect failed, NPAS collected in a name that indicated a third party was collecting, NPAS treated the accounts as though they were in default, and NPAS attempted to collect the 4683 account after it was deemed to be in default.

For these reasons, Young is entitled to summary judgment under the FDCPA against both Defendants.


DATED 1/8/2018                                    /s/ Eric Stephenson
                                                 _____
                                                 *Attorney for Plaintiff*

---

[102] 15 U.S.C. § 1692f(1)
[103] 15 U.S.C. § 1692e(2)(A) and 15 U.S.C. § 1692e(10)
[104] 15 U.S.C. § 1692c(c)
[105] 15 U.S.C. § 1692c(a)(2)

CERTIFICATE OF SERVICE

I hereby certify that on 1/8/2018 I filed the foregoing REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT through this court's electronic filing
system which automatically notifies counsel of record for the Defendants.


/s/ Eric Stephenson
*Attorney for Plaintiff*