Scott Dickenson (pro hac vice)
Jamie Cotter (pro hac vice)
Arthur Gregg (pro hac vice)
SPENCER FANE LLP
Attorneys for Defendants
1700 Lincoln Street, Suite 2000
Denver, Colorado 80203-4554
Telephone: 303-839-3800
Facsimile:  303-839-3838
sdickenson@spencerfane.com
jcotter@spencerfane.com
agregg@spencerfane.com

Christian S. Collins (8452)
Christopher S. Hill (9931)
KIRTON McCONKIE
Attorneys for Defendants
36 South State Street, Suite 1900
Salt Lake City, Utah 84111
Telephone: (801) 328-3600
Facsimile: (801) 321-4893
ccollins@kmclaw.com
chill@kmclaw.com

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | | |
|---|---|---|
| ROBYN YOUNG, | : | |
| | : | **DEFENDANT NPAS, INC.'S MOTION** |
| Plaintiff, | : | **FOR PARTIAL SUMMARY** |
| | : | **JUDGMENT AND MEMORANDUM** |
| v. | : | **IN SUPPORT THEREOF** |
| | : | |
| NPAS, INC., and MEDICREDIT, INC., | : | Case No. 2:16-cv-01104-CW-EFJ |
| | : | |
| Defendants. | : | Judge Clark Waddoups |

STL 2595706.5

Comes now Defendant NPAS, Inc. ("NPAS") and respectfully moves the Court for partial summary judgment in its favor and against Plaintiff Robyn Young ("Plaintiff") on her claim that NPAS violated the Federal Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (the "FDCPA").

## INTRODUCTION AND RELIEF SOUGHT

Plaintiff claims that NPAS and Medicredit, Inc. ("Medicredit" and, collectively with NPAS, "Defendants") have violated both the FDCPA and the Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-1, et seq. (the "UCSPA"). However, in an effort to obtain relief to which she is not entitled, Plaintiff intentionally blurs the lines: between the actions of Defendants, between her numerous unpaid medical accounts, and between the damage caused by Defendants' alleged conduct and the damage for which she was compensated under worker's compensation. Perhaps the greatest example of Plaintiff blurring lines to meet her burdens is her decision to bring an FDCPA claim against NPAS, and maintain such a claim in her First Amended Complaint and her proposed Second Amended Complaint, despite being advised that NPAS does not meet the definition of a "debt collector" under the FDCPA, is not bound to follow the FDCPA and <u>cannot</u> be sued for violating the FDCPA.

Because NPAS cannot be sued for an alleged violation of the FDCPA, NPAS's request for relief is simple: NPAS requests partial summary judgment in its favor and against Plaintiff on her claim that NPAS violated the FDCPA.

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

**I.      NPAS CONDUCTS ONLY "EARLY OUT" COLLECTIONS**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Rule 56-1(b)(3) of the Rules of Practice of the United States District Court for the District of Utah, NPAS submits the following statements for its Statement of Undisputed Material Facts:

1.      NPAS is not a debt collection company or in the business of collecting defaulted medical consumer debts.  (*See* NPAS's Answer and Affirmative Defenses to First Amended Complaint, a true and accurate copy of which is attached to the accompanying appendix of evidence  as D-1, at ¶¶ 2-3; *see also* Declaration of Don Wright ("Wright Decl."), a true and accurate copy of which is attached to the accompanying appendix of evidence as D-2, at ¶ 2.)

2.      NPAS conducts only "early out" collections.  "Early out" collections involve attempts to collect on unpaid accounts prior to the time that the account is deemed to be in default.  (Wright Decl., D-2, ¶ 2.)

3.      NPAS's performance of "early out" collection services for certain of its clients, including the services provided with regard to the unpaid medical debts of Plaintiff, is governed, in part, by (1) an Intercompany Services Agreement ("ISA") between NPAS, on the one hand, and HSS Systems, LLC ("HSS"), on the other, and (2) an Amended and Restated Master Services Agreement ("MSA") between non-party Parallon Business Solutions, LLC, on behalf of itself and certain affiliates, on the one hand, and non-party Mountain Division, Inc., on behalf of itself and as a disclosed agent for certain facilities, on the other.  (Wright Decl., D-2, ¶ 3; *see also* MSA, a true and accurate redacted copy of which is attached to the accompanying appendix of

evidence as D-3; ISA, a true and accurate redacted copy of which is attached to the accompanying appendix of evidence as D-4).

4. Under the MSA, NPAS and HSS are both affiliates of Parallon Business Solutions, LLC. (Wright Decl., D-2, ¶ 4; MSA, D-3, § 1.11, p. NP0131).

5. Under the MSA, St. Mark's Hospital is a facility which receives services from NPAS and HSS. (Wright Decl., D-2, ¶ 5; MSA, D-3, p. NP0141).

6. Under the MSA, NPAS provides "Early Out Collections" for St. Mark's Hospital, which are defined as: "Collection of early stage, non-delinquent balances that are due from the patient/guarantor. Unless prohibited by State law, Service Provider performs these services in the name of the hospital or physician." (Wright Decl., D-2, ¶ 6; MSA, D-3, p. NP0147).

7. As part of the services that HSS provides for St. Mark's Hospital, it contracts certain services with NPAS via the ISA. (Wright Decl., D-2, ¶ 7).

8. Under the terms of the ISA, NPAS agreed to provide "early out" collection services to facilities, including St. Mark's Hospital. (Wright Decl., D-2, ¶ 8; ISA, D-4, § 3.1, p. NP0120).

9. The "early out" collection services provided by NPAS pursuant to the ISA are provided "as an extension of the Client Hospital's business office and not as a 'debt collector' as that term is defined under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and analogous state laws." (Wright Decl., D-2, ¶ 9; ISA, D-4, § 3.2, p. NP0121).

10. Indeed, the ISA expressly provides that:

Because NPAS, Inc. is providing services on current patient accounts, which are not in default at the time that they are obtained by NPAS, Inc., NPAS, Inc. is not a

STL 2595706.5

4

debt collector within the meaning of the FDCPA and analogous state laws. HSS understands and agrees that NPAS, Inc. is in the business of servicing accounts that are not in default when NPAS, Inc. takes responsibility for the accounts, and that NPAS, Inc. cannot render services to HSS on Defaulted Accounts.

(Wright Decl., D-2, ¶ 10; ISA, D-4, § 7.1, p. NP0122).

11.     In order to ensure NPAS' status as solely a provider of "early out" collection services, HSS warranted that "it will not place with, transmit to, assign, or otherwise provide to NPAS, Inc. for servicing any Defaulted Accounts" and that HSS would not establish or maintain any practices or procedures "that are inconsistent with the exclusion of NPAS, Inc. as a debt collector, as defined in the FDCPA…"  (Wright Decl., D-2, ¶ 11; ISA, D-4, § 7.2, p. NP0122).

12.     As part of the ISA, NPAS "relie[s] upon HSS's representations that any accounts transmitted to NPAS, Inc. for servicing are not in default at the time they are transmitted to NPAS, Inc."  (Wright Decl., D-2, ¶ 12; ISA, D-4, § 7.3, p. NP0123).

13.     As a result, NPAS is not a "debt collector" and not subject to the requirements of the FDCPA.  (*See* NPAS's Answer and Affirmative Defenses to First Amended Complaint, D-1, at ¶ D.)

14.     Accordingly, NPAS is not required to comply with the FDCPA because it does not meet the definition of a "debt collector" under the FDCPA.  (*See* NPAS, Inc.'s Responses to Plaintiff's First Set of Interrogatories, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-5, Response to Interrogatory No. 19.)

## II.   PLAINTIFF RECEIVES MEDICAL TREATMENT FROM ST. MARK'S HOSPITAL AND FAILS TO PAY.

15.     On May 23, 2014, Plaintiff signed a "Conditions of Admission and Consent for Outpatient Care" in connection with medical services received from St. Mark's Hospital that

same date. (*See* Conditions of Admission and Consent for Outpatient Care dated May 23, 2014, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-6).

16. On June 3, 2014, Plaintiff's husband, as a representative of Plaintiff, signed a "Conditions of Admission and Consent for Outpatient Care" in connection with medical services received from St. Mark's Hospital that same date. (*See* Conditions of Admission and Consent for Outpatient Care dated June 3, 2014, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-7).

17. On November 2, 2015, Plaintiff signed a "Conditions of Admission and Consent for Outpatient Care" in connection with medical services received from St. Mark's Hospital that same date. (*See* Conditions of Admission and Consent for Outpatient Care dated November 2, 2015, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-8).

18. On February 2, 2016, Plaintiff signed a "Conditions of Admission and Consent for Outpatient Care" in connection with medical services received from St. Mark's Hospital that same date. (*See* Conditions of Admission and Consent for Outpatient Care dated February 2, 2015, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-9).

19. On May 29, 2016, Plaintiff signed a "Conditions of Admission and Consent for Outpatient Care" in connection with medical services received from St. Mark's Hospital that same date. (*See* Conditions of Admission and Consent for Outpatient Care dated May 29, 2016, a true and accurate copy of which is attached to the accompanying appendix of evidence as D-10).

20. Each of the Conditions of Admission and Consent for Outpatient Care agreements (the "CoT Agreements"), signed by Plaintiff in connection with each of the foregoing dates of service, contained the following provision:

> I acknowledge that the Providers may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing. **During the time that the medical account is being serviced by the EBO Servicer, the account shall not be considered delinquent, past due or in default**, and shall not be reported to a credit bureau or subject to collection legal proceedings. … Upon return to the Provider by the EBO Servicer, the Provider may place the account back with the EBO Servicer, or, **at the option of the Provider, may determine the account to be delinquent, past due and in default**.

(*See* CoT Agreements, D-6, D-7, D-8, D-9, and D-10).

21. On July 22, 2014, a debt of $431.76 was placed with NPAS for the services performed by St. Mark's Hospital for Plaintiff on June 3, 2014 and assigned the account number 500924860 ("Acct. 500924860"). (*See* Wright Decl., D-2, ¶ 14).

22. On February 27, 2015, a debt of $2,539.88 was placed with NPAS for the services performed by St. Mark's Hospital for Plaintiff on May 23, 2014 and assigned the account number 500904683 ("Acct. 500904683"). (*See* Wright Decl., D-2, ¶ 15).

23. On June 11, 2015, a debt of $181.05 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on February 23, 2015 and assigned the account number 501451437 ("Acct. 501451437"). (*See* Wright Decl., D-2, ¶ 16).

24. On December 28, 2015, a debt of $952.04 was placed with NPAS for the services performed by St. Mark's Hospital for Plaintiff on November 2, 2015 and assigned the account number 501934604 ("Acct. 501934604"). (*See* Wright Decl., D-2, ¶ 17).

25. On February 29, 2016, a debt of $847.36 was placed with NPAS for the services performed by St. Mark's Hospital for Plaintiff on February 2, 2016 and assigned the account number 502106966 ("Acct. 502106966"). (*See* Wright Decl., D-2, ¶ 18).

26. On August 2, 2016, a debt of $713.89 was placed with NPAS for the services performed by St. Mark's Hospital for Plaintiff on May 29, 2016 and assigned the account number 502361159 ("Acct. 502361159"). (*See* Wright Decl., D-2, ¶ 19).

## ARGUMENT

### I. LEGAL STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment is granted "when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kitchen v. Herbert*, 961 F. Supp. 2d 1181, 1192-93 (D. Utah 2013) (quoting Fed. R. Civ. P. 56(a)). A moving party is entitled to summary judgment when the pleadings and record evidence show that "there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Id*.

As the party moving for summary judgment, NPAS bears the initial responsibility of identifying the portions of the record that demonstrate the absence of a genuine issue of material

STL 2595706.5

fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where, as here, the non-moving party bears the burden of proving material facts at trial, NPAS may satisfy its responsibility either by showing Plaintiff's inability to establish such material facts, or merely the absence of evidentiary support in the record for such material facts. *Wesley v. Gen. Drivers, Warehousemen & Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011). Once NPAS satisfies its responsibility, "the burden shifts to [Plaintiff] to create, through significantly probative evidence, genuine issues of material fact necessitating a trial." *Bivins v. Bruno's, Inc.*, 953 F. Supp. 1558, 1560 (M.D. Ga. 1997).

## II. NPAS IS NOT A "DEBT COLLECTOR" UNDER THE FDCPA

To assert a civil claim under the FDCPA, Plaintiff must demonstrate that:

(1) he or she is a consumer within the meaning of 15 U.S.C. § 1692a(3);

(2) the debt is one for personal, family, or household purposes, 15 U.S.C. § 1692a(5);

**(3) defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6)**; and

(4) the defendant violated a provision of the FDCPA.

*See Wisdom v. Wakefield & Assocs.*, No. 2:16-cv-00303-DB, 2016 U.S. Dist. LEXIS 89768, at *4 (D. Utah July 11, 2016); *Cordova v. Jenkins*, No. 16-460 KG/KBM, 2017 U.S. Dist. LEXIS 60308, at *7 (D.N.M. Apr. 20, 2017); *Rhodes v. Olson Assocs., P.C.*, 83 F. Supp. 3d 1096, 1103 (D. Colo. 2015).

Thus, an essential element of Plaintiff's FDCPA claim against NPAS is that NPAS is a "debt collector" under the FDCPA. *Frone v. JP Morgan Chase & Co.*, 2017 U.S. App. LEXIS 9914, at *6 (11th Cir. June 5, 2017). Here, it is uncontroverted that: NPAS is not a debt collection company or in the business of collecting defaulted medical consumer debts (NPAS's

STL 2595706.5

Answer and Affirmative Defenses to First Amended Complaint, D-1, ¶¶ 2-3; Wright Decl., D-2, ¶ 2.). NPAS is not a "debt collector" and is not subject to the requirements of the FDCPA (NPAS's Answer and Affirmative Defenses to First Amended Complaint, D-1, ¶ D), and NPAS is not required to comply with the FDCPA because it does not meet the definition of a "debt collector" under the FDCPA (NPAS, Inc.'s Responses to Plaintiff's First Set of Interrogatories, D-5, Response to Interrogatory No. 19).

The FDCPA provides the following definition of a "debt collector" subject to its provisions:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

*See* 15 U.S.C.S. § 1692a(6). However, the FDCPA goes on to exclude from the definition of "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person." *See* 15 U.S.C.S. § 1692a(6)(F)(iii); *Gonzalez v. Wells Fargo Bank, N.A.*, No. 2:12-cv-00286-DN, 2013 U.S. Dist. LEXIS 80245, at *3 (D. Utah June 4, 2013).

Plaintiff's debts were not in default at the time NPAS obtained them. (Wright Decl., D-2, ¶ 8; ISA, D-4, § 3.1, p. NP0120). Thus, because the debts were not in default, NPAS is not a debt collector as that term is defined by the FDCPA. *Church v. Accretive Health, Inc.*, No. 14-0057-WS-B, 2015 U.S. Dist. LEXIS 158476, at *30 (S.D. Ala. Nov. 24, 2015); *see also Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1314 (11th Cir. 2015) ("Subsection (F)(iii) excludes any person who is collecting or attempting to collect on any debt owed or due

another from the term "debt collector" if the debt was not in default at the time it was acquired. ... Thus, a person who otherwise meets the definition of "debt collector" may be excluded from the term if he obtained a debt from another, he is collecting the debt for another, and the debt was acquired prior to default."); *Fenello v. Bank of Am., NA*, 577 F. App'x 899, 902 (11th Cir. 2014) ("In this case, the district court correctly concluded that Bank of America was not a 'debt collector' for purposes of § 1692g(b) because its debt collection activities involved a debt that was not in default at the time Bank of America became the servicer."); *Glazer v. Chase Home Fin. LLC*, 704 F.3d 453, 457 (6th Cir. 2013) (concluding that a servicer was not a "debt collector" within the meaning of the FDCPA because the defendant began servicing the loan before it was in default); *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) (same).

The dispositive question for Plaintiff's FDCPA claim against NPAS is, therefore, whether the alleged debts were "in default" when they were assigned to NPAS. *See Ruth v. Triumph Partnerships*, 577 F.3d 790, 796 (7th Cir. 2009) ("Where, as here, the party seeking to collect a debt did not originate it but instead acquired it from another party, we have held that the party's status under the FDCPA turns on whether the debt was in default at the time it was acquired.").

As an initial matter, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, **emphasizing that only after some period of time does an outstanding debt go into default**." *Alibrandi v. Fin. Outsourcing Servs.*, 333 F.3d 82, 86 (2d Cir. 2003) (emphasis added); *see, e.g., Jones v. InTuition, Inc.*, 12 F. Supp. 2d 775, 779 (W.D. Tenn. 1998) ("Prior to the default period, the unpaid loan installment is considered delinquent."). "Thus, case law rejects the proposition that

'default occurs immediately after a debt becomes due.'" *Church*, 2015 U.S. Dist. LEXIS 158476, at *32 (quoting Alibrandi, 333 F.3d at 86). The FDCPA's "legislative history is consistent with construing 'in default' to mean a debt that is at least delinquent, and sometimes more than overdue." *De Dios v. Int'l Realty & RC Invs.*, 641 F.3d 1071, 1075 n.3 (9th Cir. 2011) (emphasis added). The legislative intent behind the "not in default" exception to FDCPA has been described by the Third Circuit as follows:

> If the loan is current when it is acquired, the relationship between the assignee and the debtor is, for purposes of regulating communications and collections practices, effectively the same as that between originator and the debtor. If the loan is in default, no ongoing relationship is likely and the only activity will be collection.

*F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 174 (3rd Cir. 2007) (quoting *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 538 (7th Cir. 2003); *see also Ruth v. Triumph P'Ships*, 577 F.3d 790, 797 (7th Cir. 2009) ("The purchaser of an already-defaulted debt—like the debt collector, and unlike the originator and servicer of a non-defaulted debt—has no ongoing relationship with the debtor and, therefore, no incentive to engender good will by treating the debtor with honesty and respect.").

In addition to the well-established maxim that default requires more than delinquency, "where a contract between the originating creditor and the consumer delineates when the account will be deemed defaulted … courts have generally held that such agreements … dictate when an account is 'in default' for FDCPA purposes." *Church*, 2015 U.S. Dist. LEXIS 158476, at *31.

Here, the evidence demonstrates, without dispute, that Plaintiff's debts were not in default at the time they were placed with NPAS. As an initial matter, the Declaration of Don Wright and the agreements which governed the relationship between NPAS and St. Mark's

Hospital (discussed below) are uncontroverted. Here, the ISA and MSA specifically limit the services provided by NPAS to St. Mark's Hospital from meeting the definition of a "debt collector" under the FDCPA. Indeed, under the MSA, NPAS and HSS are both affiliates of Parallon Business Solutions, LLC, who provide services to St. Mark's hospital. (Wright Decl., D-2, ¶¶ 3-4; MSA, D-3, § 1.11, p. NP0131). Under the MSA, NPAS provides "Early Out Collections" for St. Mark's Hospital, which are defined as: "Collection of early stage, non-delinquent balances that are due from the patient/guarantor. (Wright Decl., D-2, ¶ 6; MSA, D-3, p. NP0147). As part of the services that HSS provides for St. Mark's Hospital, it contracts certain services out to NPAS via the ISA. (Wright Decl., D-2, ¶ 7). Under the terms of the ISA, NPAS agreed to provide "early out" collection services to facilities, including St. Mark's Hospital. (Wright Decl., D-2, ¶ 8; ISA, D-4, § 3.1, p. NP0120). The "early out" collection services provided by NPAS for St. Mark's Hospital pursuant to the ISA are provided "**as an extension of the Client Hospital's business office** and not as a 'debt collector' as that term is defined under the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") and analogous state laws." (Wright Decl., D-2, ¶ 9; ISA, D-4, § 3.2, p. NP0121(emphasis added)). Indeed, the ISA expressly provides that:

> Because NPAS, Inc. is providing services on current patient accounts, which are not in default at the time that they are obtained by NPAS, Inc., NPAS, Inc. is not a debt collector within the meaning of the FDCPA and analogous state laws. HSS understands and agrees that NPAS, Inc. is in the business of servicing accounts that are not in default when NPAS, Inc. takes responsibility for the accounts, and that NPAS, Inc. cannot render services to HSS on Defaulted Accounts.

(Wright Decl., D-2, ¶ 11; ISA, D-4, § 7.2, p. NP0122). Furthermore, in order to ensure NPAS' status as solely a provider of "early out" collection services, HSS warranted that "it will not place with, transmit to, assign, or otherwise provide to NPAS, Inc. for servicing any Defaulted

STL 2595706.5

Accounts" and that HSS would not establish or maintain any practices or procedures "that are inconsistent with the exclusion of NPAS, Inc. as a debt collector, as defined in the FDCPA…" (Wright Decl., D-2, ¶ 11; ISA, D-4, § 7.2, p. NP0122). Accordingly, NPAS "relie[s] upon HSS's representations that any accounts transmitted to NPAS, Inc. for servicing are not in default at the time they are transmitted to NPAS, Inc." (Wright Decl., D-2, ¶ 12; ISA, D-4, § 7.3, p. NP0123).

Nor can the lengths of time—between the date of service and the date the debt was placed with NPAS—be used to drum up a genuine issue of material fact regarding whether NPAS is a "debt collector" under the FDCPA. As noted above, "[i]n applying the FDCPA, courts have repeatedly distinguished between a debt that is in default and a debt that is merely outstanding, **emphasizing that only after some period of time does an outstanding debt go into default**." *Alibrandi*, 333 F.3d at 86 (emphasis added). Case law supporting this proposition is legion. *Jones*, 12 F. Supp. 2d at 779; *Church*, 2015 U.S. Dist. LEXIS 158476, at *32 (quoting *Alibrandi*, 333 F.3d at 86); *De Dios*, 641 F.3d at 1075 n.3; *F.T.C.*, 502 F.3d at 174 (quoting *Schlosser*, 323 F.3d at 538;) *Ruth*, 577 F.3d at 797. Moreover, the Second Circuit has undertaken a review of numerous federal regulations which, although they "reflect inconsistent periods of time preceding default, they all agree that default does not occur until *well after* a debt becomes outstanding." *Alibrandi*, 333 F.3d at 87 (emphasis added) (citing 7 C.F.R. § 762.141(a) (1999) (30 days for farm loans); 12 C.F.R. § 336.3(c) (1999) (90 days for loans by federal insured depository institutions to Federal Deposit Insurance Corporation employees); 34 C.F.R. § 682.200(b) (1998) (180 days for unpaid loan installments under the Federal Family Education Loan Program); 34 C.F.R. § 685.102(b) (1999) (270 days for certain student loans)).

Stated differently, Plaintiff cannot use the time—between the date of service and the date the debt was placed with NPAS—to create a *genuine* issue of material fact.  On July 22, 2014, Account No. 500924860 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on June 3, 2014.  (Wright Decl., D-2, ¶ 14).  This means the debt was placed with NPAS forty-nine (49) days after services were rendered to Plaintiff by St. Mark's hospital.  (Wright Decl., D-2, ¶ 14).  On February 27, 2015, Account No. 500904683 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on May 23, 2014.  (Wright Decl., D-2, ¶ 15).  This means the debt was placed with NPAS two hundred eighty (280) days after services were rendered to Plaintiff by St. Mark's hospital.  (Wright Decl., D-2, ¶ 15).  On June 11, 2015, Account No. 501451437 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on February 23, 2015.  (Wright Decl., D-2, ¶ 16).  This means the debt was placed with NPAS one hundred eight (108) days after services were rendered to Plaintiff by St. Mark's Hospital.  (Wright Decl., D-2, ¶ 16).  On December 28, 2015, Account No. 501934604 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on November 2, 2015.  (Wright Decl., D-2, ¶ 17).  This means the debt was placed with NPAS fifty-six (56) days after services were rendered to Plaintiff by St. Mark's Hospital.  (Wright Decl., D-2, ¶ 17).  On February 29, 2016, Account No. 502106966 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on February 2, 2016.  (Wright Decl., D-2, ¶ 18).  This means the debt was placed with NPAS twenty-two (22) days after services were rendered to Plaintiff by St. Mark's Hospital.  (Wright Decl., D-2, ¶ 18).  Finally, on August 2, 2016, Account No. 502361159 was placed with NPAS for services performed by St. Mark's Hospital for Plaintiff on May 29, 2016.  (Wright Decl., D-2, ¶ 19).  This means the

debt was placed with NPAS sixty-six (66) days after services were rendered to Plaintiff by St. Mark's Hospital. (Wright Decl., D-2, ¶ 19).

The Second Circuit is clear: the lengths of time preceding default may vary dramatically. *Alibrandi*, 333 F.3d at 87. Moreover, the ISA and MSA are crystal clear that Plaintiff's debts were not in default at the time they were transferred to NPAS. Finally (and independently dispositive), the agreements between Plaintiff and St. Mark's Hospital—the Conditions of Admission and Consent for Outpatient Care—remove any trace of doubt. Truly, this Court need not look at any evidence beyond these agreements to determine that the debts placed with NPAS were not in default and thus, with regard to Plaintiff's claims, NPAS is not a "debt collector" under the FDCPA. *Church*, 2015 U.S. Dist. LEXIS 158476, at *31 (noting that "courts have generally held that such agreements … **dictate when an account is 'in default' for FDCPA purposes**") (emphasis added).

In the CoT Agreements, Plaintiff specifically "acknowledge[d] that the [St. Marks Hospital] may utilize the services of a third party Business Associate or affiliated entity as an extended business office ("EBO Servicer") for medical account billing and servicing." (CoT Agreements, D-6, D-7, D-8, D-9, and D-10). Under the ISA, the "early out" collection services provided by NPAS for St. Mark's Hospital were "as an extension of the Client Hospital's business office..." (Wright Decl., D-2, ¶ 9; ISA, D-4, § 3.2, p. NP0121). Stated, differently, NPAS was an EBO Servicer, as that term is defined in the CoT Agreements. This relationship between NPAS and St. Mark's Hospital confirms, to the exclusion of any genuine issue of material fact, that NPAS did not receive defaulted debts. Indeed, the CoT Agreements, signed by Plaintiff, provide that "[d]uring the time that the medical account is being serviced by the

EBO Servicer, **the account shall not be considered delinquent, past due or in default**." (CoT Agreements, D-6, D-7, D-8, D-9, and D-10). In fact, Plaintiff expressly consented that her debts, due and owing to St. Marks Hospital, could only be determined "delinquent, past due and in default" after NPAS had finished servicing the account and returned it to St. Mark's Hospital, and even then, only at the option of St. Mark's Hospital. (CoT Agreements, D-6, D-7, D-8, D-9, and D-10 ("**Upon return to the Provider by the EBO Servicer**, the Provider may place the account back with the EBO Servicer, or, **at the option of the Provider**, may determine the account to be delinquent, past due and in default.")). There is no genuine issue of material fact contravening the status of the debts—owed by Plaintiff to St. Mark's Hospital—at the time they were transferred to NPAS. Thus, there is no genuine issue of material fact disputing that NPAS is not a "debt collector" subject to the provisions of the FDCPA. In sum, Plaintiff's claim that NPAS violated the FDCPA must fail.

## CONCLUSION

Based upon the uncontroverted facts set forth above, Plaintiff is unable to demonstrate a genuine issue of material fact regarding her *threshold* burden of proof that NPAS has violated the FDCPA: that NPAS is a "debt collector" as that term is defined in the FDCPA. Because she cannot create a genuine issue of material of fact, her claim that NPAS violated the FDCPA must fail as a matter of law.

WHEREFORE, NPAS, Inc. respectfully requests that the Court enter partial summary judgment in its favor and against Plaintiff Robyn Young on her claim that NPAS violated the Federal Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq*., and that the Court grant such other or additional relief as it deems just and appropriate.

DATED this 29th day of January, 2018.

                Respectfully submitted,

                SPENCER FANE LLP

                /s/ Jamie N. Cotter
                Jamie N. Cotter

                *Attorneys for Defendants Medicredit, Inc. and NPAS, Inc.*

## CERTIFICATE OF MAILING

I hereby certify that on the 29th day of January, 2018, I caused a true and correct copy of the foregoing **DEFENDANT NPAS, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** to be electronically served by the Court on all parties.

    David Humphreys
    Luke Wallace
    HUMPHREYS WALLACE HUMPHREYS PC
    9202 South Toledo Avenue
    Tulsa, OK 74137

    Eric Stephenson
    Stephenson Law Firm
    299 S. Main Street, Suite 1300
    Salt Lake City, Utah 84111

                /s/ Jamie N. Cotter